**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Mindee J. Reuben
Steven J. Greenfogel
1515 Market Street - Suite 1200
Philadelphia, PA 19102
Tel: (267) 519-8306
Fax: (973) 623-0858
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

*Attorneys for Plaintiff Alexia Dahmes D/B/A Alexia Viola Napa Valley*
*(Additional Counsel on Signature Page)*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEXIA DAHMES d/b/a ALEXIA VIOLA NAPA VALLEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>FIRMENICH SA, FIRMENICH INCORPORATED, AGILEX FLAVORS & FRAGRANCE, INC., GIVAUDAN SA, GIVAUDAN FRAGRANCES CORPORATION, GIVAUDAN ROURE INC., UNGERER & COMPANY, INC., CUSTOM ESSENCE INCORPORATED, SYMRISE AG AND SYMRISE INC., AND INTERNATIONAL FLAVORS & FRAGRANCES, INC.<br><br>        Defendants. | **CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff Alexia Dahmes d/b/a Alexia Viola Napa Valley, individually and on behalf of all others similarly situated ("Classes" or "Class Members"), files this Class Action Complaint ("Complaint") against Defendants Firmenich SA, Firmenich Incorporated, Agilex Flavors & Fragrance, Inc. (collectively, "Firmenich"); Givaudan SA, Givaudan Fragrances Corporation, Givaudan Roure Inc., Ungerer & Company, Inc., Custom Essence Incorporated (collectively, "Givaudan"); Symrise AG and Symrise Inc. (collectively, "Symrise"); and International Flavors & Fragrances, Inc. ("IFF") (collectively, "Defendants"). Plaintiff and the Classes seek injunctive relief, treble damages, costs, attorneys' fees, and other just relief for Defendants' *per se* violation of Section 1 of the Sherman Act, 15 U.S.C § 1, state antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment laws of the several States. The following allegations are based on personal knowledge as to Plaintiff's own conduct and on the investigation conducted by their counsel as to all other allegations. Plaintiff demands a trial by jury.

## INTRODUCTION AND SUMMARY OF ACTION

1.     Plaintiff brings this class action alleging that Defendants participated in a conspiracy to fix, raise, maintain, and stabilize the prices for "Fragrances," as defined below, sold in the United States from January 1, 2018, to the present ("Class Period").

2.     Plaintiff and Class Members are entities that sell consumer goods that contain Fragrances (scents) manufactured by Defendants. These Fragrances are added to consumer goods to make them more appealing to a user, and can establish customer preference or even establish an individual signature scent. Smell is an extremely important driver of consumer choice and purchase; it is therefore a fixed input for many goods, which are purchased and then added to products sold to consumers by Plaintiff and Class Members.

3.     Defendants are the world's largest suppliers of Fragrances. They manufacture, market, and sell Fragrances globally; as such, Defendants sold Fragrances indirectly to Plaintiff and Class Members in the United States. Defendants' collective sales in the United States in 2023 are estimated to exceed $8 billion.

4.     Upon information and belief, beginning at least as early as January 1, 2018, Defendants entered into an unlawful agreement in restraint of trade to increase Fragrance prices. Defendants' conspiracy to fix prices for Fragrances was in reaction to increased costs of the raw materials used to manufacture Fragrances. To maintain their profitability, Defendants coordinated with one another to set the price of Fragrances for their customers, divided the consumer market by allocating certain customers to certain Defendants, and imposed supply constraints for Fragrances. Through this unlawful coordination, Defendants charged their customers

supracompetitive prices, which were in turn passed through to indirect purchasers of Fragrances, including Plaintiff and the Class.

5.     Defendants coordinated to implement incremental, contemporaneous price increases during the Class Period, all while experiencing growth in their Fragrance sale volumes and profitability. In a competitive market, rising prices would have caused a decrease in demand; and yet, Defendants continued to increase their profitability (despite additional hurdles caused by the COVID-19 pandemic, supply chain disruptions, and rapid inflation).

6.     On March 8, 2023, the Swiss competition authority, COMCO, announced that there were market indications that Firmenich International SA (Geneva), Givaudan SE (Geneva), International Flavors & Fragrances Inc. (USA), and Symrise AG (Germany) violated Swiss cartel law. COMCO issued a statement that there "are suspicions that these undertakings have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances."[1] Subsequently, COMCO conducted raids on various subsidiaries or locations otherwise affiliated with Defendants.[2]

---

[1] COMCO Press Release, "COMCO investigates possible collusions in the fragrance market", https://www.weko.admin.ch/weko/en/home/medien/press-releases/nsb-news.msg-id-93502.html (March 8, 2023). The Competition Commission's press release specifically names Ferminech International SA, Givaudan SA, International Flavors & Fragrances Inc. (USA), and Symrise AG (Germany).
[2] *Id.*

7.     Defendants' conduct constitutes a horizontal conspiracy in restraint of trade—a *per se* violation of Section 1 of the Sherman Act, as well as a violation of state antitrust and consumer protection laws. As a result of Defendants' unlawful conduct, Plaintiff and the Classes have been injured in the form of paying artificially inflated prices for Fragrances and/or Fragrance Ingredients manufactured by one or more Defendants or their affiliated entities during the Class Period.

## PARTIES

8.     Plaintiff Alexia Dahmes d/b/a Alexia Viola Napa Valley is a retailer that manufactures and sells artisan designed candles and home fragrances, in addition to other goods. Plaintiff is located in Calistoga, California. Plaintiff purchased Fragrances and/or Fragrance Ingredients indirectly from one or more Defendants, which she used to manufacture consumer goods, at a supra-competitive price and suffered antitrust injury and damages as a material, direct, and proximate result of Defendants' anticompetitive conduct.

9.     Firmenich Defendants: Firmenich SA is a privately-owned Swiss corporation with its principal place of business located at Rue de la Bergere 7, Satigny CH-1242, Switzerland. Firmenich SA is the self-proclaimed "world's largest privately-owned fragrance" company, and manufactures and sells Fragrances

to be used in consumer goods.[3] Firmenich SA "operates 46 manufacturing plants and six R & D centers around the world.,"[4] including manufacturing sites in the United States.[5] Firmenich Inc. (USA) is incorporated in Delaware with its principal place of business located at 250 Plainsboro Road, Plainsboro, New Jersey 08536. Firminech Inc. is the primary United States subsidiary of Firmenich SA, and is responsible for developing and supplying fragrances to customers and, ultimately, consumers in the United States.

10.     Defendant Agilex Flavors & Fragrances, Inc. ("Agilex") is incorporated in Delaware with its principal place of business at 140 Centennial Ave, #100, Piscataway, New Jersey 08854. Agilex manufactures Fragrances for air, home, and personal care, in addition to Fragrances for industrial use. Firmenich acquired Agilex in 2017, and it has since operated as a subsidiary of Firmenich.

11.     The Givaudan Defendants: Givaudan SA is a Swiss corporation with its principal place of business at Chemin de la Parfumerie 5 Vernier, Geneve, 1214, Switzerland. Givaudan is one of (if not) the largest manufacturer of Fragrances in the world, with a large percentage of its Fragrances being used as components in

---

[3] Press Release, "Firmenich Launches Focus Powered by EmotiCODE, https://www.firmenich.com/fragrance/press-release/firmenich-launches-focus-powered-emoticodetm (Nov. 30, 2022).
[4] Firmenich ESG Report 2022, at 4, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.firmenich.com/sites/default/files/ESGReport_FY22.pdf.
[5] *Id.* at 32.

consumer products. As stated on their website, Givaudan has "over 166 locations worldwide, with 78 production sites,"[6] including 22 in the United States.[7] These sites include locations in New Jersey, Wisconsin, Kentucky, Pennsylvania, Illinois, California, Nebraska, Ohio, Florida, and New York. Givaudan U.S. is incorporated in Delaware with its principal place of business at 1199 Edison Dr. 1-2, Cincinnati, Ohio 45216-2265, and is Givaudan SA's primary subsidiary in the United States. Givaudan U.S. researches, manufactures, and sells Fragrances throughout the United States. Defendant Givaudan Roure Inc. is incorporated in Delaware with its principal place of business at 1199 Edison Dr. 1-2, Cincinnati, Ohio 45216-2265. Givaudan Roure is also a United States subsidiary of Givaudan SA that manufactures and sells Fragrance inputs. Defendant Custom Essences, Inc. is incorporated in New Jersey with its principal place of business at 53 Veronica Ave, Somerset, New Jersey 00873. Custom Essences and associated entities develop natural Fragrances and Fragrance ingredients at least in part for use in consumer goods.[8] Custom Essences has been wholly owned by Givaudan since it was acquired in 2021.

---

[6] Givaudan, Our global presence, https://www.givaudan.com/our-company/about-givaudan/our-global-presence
[7] Givaudan, locations, https://www.givaudan.com/locations.
[8] Givaudan, "Givaudan completes the acquisition of Custom Essence", https://www.givaudan.com/media/media-releases/2021/givaudan-completes-acquisition-custom-essence.

12.     Symrise Defendants: Symrise AG is a German stock corporation with its principal place of business at Mühlenfeldstrasse 137603, Holzminden, Germany. Symrise AG manufactures and sells Fragrances and Fragrance ingredients intended to enhance olfactory properties of consumer products. Symrise operates in roughly 160 countries, including the United States.[9] Symrise is the self-proclaimed "No. 1 supplier of Fragrance raw materials,"[10] with Fragrance offices in New Jersey, New York, Wisconsin, and South Carolina. Symrise Inc., the U.S. subsidiary of Symrise AG, is incorporated in New Jersey with its principal place of business at 300 North St., Teterboro, NJ 07609.

13.     Defendant International Flavors & Fragrances ("IFF") is incorporated in New York with its principal place of business at 521 West 57th Street, New York, New York 10019. IFF is the self-proclaimed "leading creator and manufacturer of…scent and pharma solutions and complementary adjacent products, including cosmetic active and natural health ingredients, which are used in a wide variety of consumer products."[11] IFF is known for creating "fragrance compounds, fragrance ingredients, and cosmetic ingredients that are integral elements in the world's finest

---

[9] Symrise, "At Symrise, we operate more than 100 locations across the globe", https://www.symrise.com/our-company/global-locations/.
[10] Symrise, "Fragrance", https://www.symrise.com/scent-and-care/fragrance/.
[11] SEC, International Flavors & Fragrances 2021 Form 10-k, https://www.sec.gov/Archives/edgar/data/51253/000005125322000007/iff-20211231.htm

perfumes and best-known household and personal care products."[12] IFF has approximately 210 manufacturing facilities, creative centers and application laboratories in 45 countries, including their principal research and development centers located in New Jersey, Delaware, and California.[13]

14.    During the Class Period, each of the Defendants sold Fragrances in this District and throughout the United States.

15.    Each Defendant participated in the conspiracy to artificially inflate the price of Fragrances and committed overt acts in furtherance of this conspiracy as alleged herein in this District and the United States.

16.    The term "Defendants" as used in this Complaint refers to and encompasses each Defendant and its successors, parent companies, subsidiaries, affiliates, employees, agents, officers, and directors.

## JURISDICTION AND VENUE

17.    Plaintiff brings this action on behalf of the Nationwide Class (defined below) under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).

---

[12] *Id.* at 4 ("Our consumer fragrances include three end-use categories of products: Fabric care, including laundry detergents, fabric softeners and specialty laundry products; Home Care, including household cleaners, dishwashing detergents and air fresheners; and Body Care, including personal wash, hair care and toiletries products."
[13] *Id.* at 6.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

18.    Plaintiff also asserts claims for actual and exemplary damages and injunctive relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seeks to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some defendants; and (ii) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

19.    This Court has personal jurisdiction over Defendants because, *inter alia*: a portion of the wrongdoing alleged in this Complaint took place in this District; Defendants are authorized to do business in this District and systematically and continuously conduct business in this District; Defendants have sufficient minimum contacts with the United States, including this District; and Defendants otherwise intentionally avail themselves of the markets in this District through the promotion and marketing of its Fragrances in this District; Defendants engaged in anticompetitive conduct that was directed at and had the foreseeable and intended

effect of causing injury to residents and businesses residing or located in this District. These facts render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20.   Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### I.   The Fragrance Market

21.   The scent of a product is a significant factor in influencing a consumer's choice. For some products—including soap, bodywash, shampoo, household cleaners, candles, laundry detergent, and perfume—scent may be the primary consideration informing a consumer's purchase. Plaintiff and Class Members manufacture consumer goods for resale, at least some of which contain Fragrances manufactured by Defendants.

22.   A product's scent helps establish customer preferences by developing a positive and familiar olfactory response to the product. Smells are also linked to a product's functional use; for example, consumers may associate lemon or other citrus scents with cleanliness or mint with freshness. Scents can also convey status; the smell of leather may signify luxury or richness. Research shows that most consumers "consider scent an essential and necessary component of everyday

household products."[14] Indeed, the CEO of IFF's Scent division, Nicolas Mirzayantz, stated that "scent continues to be the #1 attribute driving purchase intent and even more importantly, the purchase repeat factor."[15]

23.     Consumer goods get their scents from chemical compounds known as "Fragrances," which are additives that have a smell. Fragrances provide a pleasant scent to goods that improve the experience of the end user that can evoke function, status, or an emotional response (in addition to masking an underlying unpleasant smell of the product). As such, the addition of these Fragrances to goods drives sales for these products—products manufactured by Plaintiff and other Class Members for resale.

24.     Manufacturers of consumer goods generally do not make their own Fragrances; rather, they purchase Fragrances from manufacturers, including Defendants, and incorporate the Fragrances into candles, soap, shampoo, dish soap, detergents, cosmetics, perfumes, cleaning products, and other consumer products.

---

[14] Rachel S. Herz, Maria Larsson, Rafael Trujillo, Marisa C. Casola, Farah K. Ahmed, Stacy Lipe, & Morgan Brashear, "A three-factor benefits framework for understanding consumer preference for scented household products: psychological interactions and implications for future development", https://cognitiveresearchjournal.springeropen.com/articles/10.1186/s41235-022-00378-6 (April 1, 2022).

[15] International Flavor & Fragrances Inc. Scent Learning Lab, Edited Transcript of conference call or presentation from April 5, 2021.

25.     Manufacturers of consumer goods containing Fragrances, such as Plaintiff and Class Members, purchase Fragrances manufactured by Defendants indirectly through wholesalers and distributors.

26.     Fragrance suppliers, including Defendants, engage in the design and manufacture of fragrance-related ingredients and compounds, which are then sold to manufacturers of consumer products. "Fragrances" refer to unique, proprietary combinations of these natural and/or synthetic compounds and ingredients, including essential oils, extracts, resins, and chemicals.[16] Fragrances are then added to consumer products for resale to end-user consumers.

27.     In 2022, the global fragrance ingredients market size reached $9.1 billion; it is expected to reach $12.9 billion by 2028.[17]

28.     While Defendants guard their proprietary Fragrances, many of their offerings are substantially alike. This fact increases the pressure on Defendants to price their Fragrances at lower prices to compete for marginal market gains; indeed, IFF's 2021 annual report specifically listed this pressure as a "Risk Factor": "Our ability to price our products competitively to timely reflect higher input costs is

---

[16] Up Front Cosmetics, "Synthetic Fragrances" https://upfrontcosmetics.ca/blogs/be-upfront/synthetic-fragrances (May 14, 2020).
[17] IMARC Group, Report: Fragrance Ingredients Market: Global Industry Trends, Share, Size, Growth, Opportunity and Forecast 2023-2028, https://www.researchandmarkets.com/reports/5732797/fragrance-ingredients-market-global-industry.

critical to maintain and grow our sales…Increasing our prices to our customers could result in long-term sales declines or loss of market share if our customers find alternative suppliers or choose to reformulate their consumer products to rely less on our products."[18]

29.　Because nearly all consumer products contain Fragrances (even "fragrance-free" products often contain a small amount of Fragrance to mask unpleasant smells of ingredients) and Fragrance has such a significant effect on consumer choice, Fragrance purchasers are relatively insensitive to price increases. These conditions—overlapping products and comparatively static demand regardless of price—facilitate collusion.

## II.　Defendants Have Longstanding, Concentrated Market Power

30.　Defendants have long dominated the Fragrance market. Collectively, they control roughly 50% of the global market.[19] Defendants' U.S. market share is similarly concentrated.

31.　In addition to organic growth, Defendants have further secured their dominant market position by acquiring smaller competitors during the Class Period. Defendant Givaudan, for example, completed at least fifteen mergers and

---

[18] SEC, International Flavors & Fragrances 2021 Form 10-k, at 14, https://www.sec.gov/Archives/edgar/data/51253/000005125322000007/iff-20211231.htm.

[19] Fortune Business Insights, Flavors and Fragrances Market Size, [19] https://www.fortunebusinessinsights.com/flavors-and-fragrances-market-102329.

acquisitions during the Class Period—including United States-based companies Custom Essence[20] and Ungerer & Company.[21] Similarly, Defendant IFF executed a $26.2 billion merger with DuPont's Nutrition & Biosciences[22] and a $7.1 billion acquisition with Fragrance competitor Frutarom.[23] In conjunction with its acquisition of the company, IFF closed a number of former Frutarom manufacturing sites, further concentrating IFF's market share and reducing market capacity. Defendant Symrise acquired the Fragrance division of a major competitor—Sensient Technologies Corporation[24]—in addition to other acquisitions. Finally, Defendant Firmenich executed over ten acquisition agreements or joint ventures, including with DSM—a "merge[r] into 'powerhouse of innovation and creativity'" valued at

---

[20] Givaudan, "Givaudan completes the acquisition of Custom Essence", https://www.givaudan.com/media/media-releases/2021/givaudan-completes-acquisition-custom-essence (Dec. 3, 2021).

[21] Givaudan, "Givaudan completes the acquisition of Ungerer", https://www.givaudan.com/media/media-releases/2020/givaudan-completes-acquisition-ungerer (Feb. 20, 2020).

[22] IFF, "Legacy Nutrition & Biosciences Subsidiaries", https://www.iff.com/where-we-operate/subsidiaries ("The merger closed on February 1, 2021.").

[23] IFF Press Release, "IFF to Combine with Frutarom to Create a Global Leader in Taste, Scent, and Nutrition", https://ir.iff.com/news-releases/news-release-details/iff-combine-frutarom-create-global-leader-taste-scent-and (May 7, 2018).

[24] Symrise, "Symrise to expand Scent & Care Activities through Acquisition of Sensient's Fragrances Business Unit, https://www.symrise.com/newsroom/article/symrise-to-expand-scent-care-activities-through-acquisition-of-sensients-fragrances-business-unit/ (Nov. 23, 2020).

approximately $21 billion, to give the newly combined entity "comparable footing to IFF."[25]

32.    Defendants' market positions are further insulated by inherent market conditions which Defendants exploit, as detailed below.

33.    The Fragrance Market has high barriers to entry that effectively prevent new competitors from gaining a foothold. Factors that deter new entry include but are not limited to:

a) Regulations: Fragrance suppliers must comply with industry standards monitored by global regulatory bodies relating to environmental, safety, and health concerns. These overlapping and sometimes conflicting regulations require significant infrastructure and resources to ensure compliance.

b) Scale: The economies of scale are a significant benefit for large Fragrance suppliers, as the higher the output of a supplier, the lower their average cost per unit is. Defendants and other existing suppliers also have resources to invest in promotional materials to retain their existing customers and attract new ones.

---

[25] Food Dive, "DSM, Firmenich to merge into 'powerhouse of innovation and creativity'", https://www.fooddive.com/news/dsm-firmenich-to-merge-into-powerhouse-of-innovation-and-creativity/624759/ (June 2, 2022).

c) Access to Raw Materials: Raw materials are sourced from all over the world, requiring complex distribution and supply chain relationships. Sourcing these materials is expensive, and increasingly so as inflation rises. New entries often lack the resources to establish access to raw materials in a financially sustainable manner.

d) High Capital Start-Up Requirements: The development of Fragrances involves significant investment in research and development, marketing, promotion, manufacture, and distribution. To gain market foothold, a new entrant needs an extremely large amount of capital.

34.    Defendants are highly aware of how these factors insulate them from the threat of new competitors. In its 2022 Investor Presentation, Defendant Givaudan noted that the industry requires a "business model with high barriers to entry" and "high shifting costs for customers."[26] In 2019, Defendant Symrise similarly touted high barriers to entry as a benefit to its investors, citing the "core list system and increasing regulatory pressure" in particular.[27]

35.    These barriers to entry are clear to those outside Defendants' industry as well. Market analyst Marifaith Hackett, a director of IHS Markit, noted that the

[26] Givaudan, 2022 Investor Presentation, https://www.givaudan.com/files/giv-2022-investor-presentation_jan.pdf.
[27] Symrise, 2019 Symrise Investor Presentation, https://www.symrise.com/fileadmin/symrise/Corporate/Investors/Financial_calendar_and_presentations/190611_Symrise_Investor_Presentation_Paris.pdf.

Fragrance "business is fairly opaque to outsiders—by design no doubt—and any new entrant to the [Fragrance] industry would have to expect a fairly sharp learning curve," and that new "entrants tend to start out small."[28]

36.    Another factor that contributes to high barriers to entry is that Defendants are, to varying degrees, vertically integrated. As such, each Defendant controls several stages of the Fragrance production, including development of raw materials, manufacturing, and distributions. Most commonly, Defendants often source their own ingredients to produce proprietary fragrance compounds, reducing the cost and delay for critical inputs. Upon its acquisition of Ungerer, Defendant Givaudan's CEO expressed excitement that the acquisition would "further enhance…industry leadership…through the vertical integration into key specialty ingredients."[29] This strategy was also recently lauded by IFF, stating that its "world leading" position was "powered by innovation and an unmatched, vertically integrated portfolio."[30] Vertical integration benefits Defendants by driving greater

---

[28] Vincent Valk, "High valuations do not stop flavors and fragrances deals", Grace Matthews, https://gracematthews.com/wp-content/uploads/2021/11/Highvaluationsdonotstopflavorsandfragrancesdeals.pdf
[29] Givaudan Media Release, "Givaudan completes acquisition of Ungerer, https://www.givaudan.com/file/207451/download (Feb 20, 2020).
[30] Firmenich Press Release, "Firmenich Appoints New Leadership for Integrated Perfumery & Ingredients Organization, https://www.firmenich.com/fragrance/press-release/firmenich-appoints-new-leadership-integrated-perfumery-ingredients (Feb. 8, 2023).

efficiency, reducing costs, and increasing exclusive control over resources—none of which are possible for new entrants to the Fragrance market.

37.     Defendants further benefit from the nature of the Fragrance market in that it is characterized by high switching costs. There are inherent risks involved when a manufacturer of a consumer product switches Fragrance; the new product must undergo time consuming testing to receive approval from the relevant regulatory body, and ultimately, must be accepted by consumers.[31]

38.     Defendants are also members of a highly exclusive trade organization—the International Fragrance Association ("IFRA"). According to IFRA's website, IFRA is comprised of National Associations representing companies in 24 countries and "Regular Members," who are "multinational fragrance companies who make direct financial contributions."[32] Defendants make up two-thirds of the Regular Members in IFRA.[33] Additionally, Defendants have a significant presence on IFRA's Board: the Vice-Chair of the Board is Maurizio Volpi—head of Givaudan's Fragrance Division; Symrise's Global President, Eder Ramos, and IFF's President, Christophe de Villeplee, also hold Board seats.[34] Annually, IFRA hosts a Global Fragrance Summit, at which attendees "discuss the

---

[31] Grace Matthews, "Chemical Insights", https://gracematthews.com/wp-content/uploads/2021/10/ChemicalNewsletter-Summer2018-1.pdf (Summer 2018).
[32] IFRA, Membership of IFRA, https://ifrafragrance.org/about-ifra/membership
[33] *Id.*
[34] IFRA, Board, https://ifrafragrance.org/about-ifra/our-people.

latest trends in public policy, regulation, and sustainability impacting the fragrance value chain."[35] At this event, among others held throughout the year, Defendants have ample opportunity to coordinate. Indeed, at the 2022 Summit, Defendants were represented by Greg Adamson, the senior vice president of global regulatory affairs of Givaudan; Jeremy Compton, Givaudan's head of science and technology; Matteo Magnani, Firmenich's chief consumer and innovation officer, Ilaria Resta, Firmenich's global president of perfumery; Joris Theewis, IFF's global regulatory strategic lead; Gregory Ladics, IFF's head of product safety and chemical management; and Eder Ramos, Symrise's global president of fragrance division.[36]

39.    Additionally, all Defendants are members of and sit on the advisory committee of the Research Institute for Fragrance Materials—an organization dedicated to evaluating the safety of fragrance materials.[37] RIFM works in concert with IFRA, in that RIFM submits the results of its safety testing to INFRA which in turn ensures Fragrance manufacturers' compliance with industry-set standards.

40.    As Defendants have supervisory roles in both RIFM and IFRA, they are enabled to influence the testing processes and regulatory and safety standards for the Fragrance market.

---

[35] IFRA, "About Global Fragrance Summit 2022: The Scent of Change", https://ifrafragrance.org/priorities/dialogue/GFS
[36] IFRA, Global Fragrance Summit 2022 slide deck, https://globalfragrancesummit.com/program/IFRA-GFS-NOV2022.pdf.
[37] RIFM, Overview, https://rifm.org/about-rifm/.

41.     Furthermore, all Defendants belong to the Executive Team of FSAC—the Fragrance Science and Advocacy Council, a North American trade organization.[38] Indeed, Defendants make up 80% of FSAC's total membership.[39] FSAC's purports to provide industry expertise to policymakers, as well as retains lobbyists to "examine legal issues at the state and federal levels."[40] According to its website, the FSAC comprises more than 70% of the fragrance market in North America.[41] Defendants therefore have significant power to influence Fragrance policy making and regulations in the United States.

42.     Prior to the formation of the insular FSAC, Defendants belonged to North America-based Fragrance Creators Association ("FCA").[42] Unlike the FSAC, the FCA is a more diverse body with over 60 company members comprised of

---

[38] HBW Insight "World's Biggest Fragrance and Flavor Firms Join Forces to Champion Science in Public Policy",
https://hbw.pharmaintelligence.informa.com/RS151176/Worlds-Biggest-Fragrance-And-Flavor-Firms-Join-Forces-To-Champion-Science-In-Public-Policy

[39] FSAC, "Our Team", https://ifrafragrance.org/about-ifra/our-people (executives include global vice president of Symrise, Stephanie Blakely, who serves as president and chair of FSAC; Greg Adamson, a senior vice president of Givaudan, who serves as vice chair and vice president of FSAC; Luciana Castro, a senior vice president of Firmenich, who serves as the treasurer of FSAC; and the Vice President, Regional General Manager of NOAM Consumer Fragrances at IFF, Shardona Daneshvari, who serves as secretary of FSAC).

[40] FSAC, "Who We Are', https://fsac.org/about .

[41] Id.

[42] HBW Insight "World's Biggest Fragrance and Flavor Firms Join Forces to Champion Science in Public Policy",
https://hbw.pharmaintelligence.informa.com/RS151176/Worlds-Biggest-Fragrance-And-Flavor-Firms-Join-Forces-To-Champion-Science-In-Public-Policy.

Fragrance manufacturers and purchasers.[43] All Defendants left the FCA in concert to launch the more exclusive FSAC in order to lobby for legislation favorable to Defendants at the expense of smaller competitors, new entrants, and their customers.

### III. Defendants Have Abused Their Market Power at the Expense of Plaintiff and the Classes

#### A. Plaintiff and the Classes Purchased Fragrances Indirectly from Defendants

43.    Plaintiff and Class Members that manufacture and sell consumer products purchase Fragrances indirectly from Defendants by purchasing Fragrances and fragrance compounds produced using Fragrances from distributors and wholesalers. Some of these distributors have direct relationships with Defendants. For example:

 a.  The John D. Walsh Company identifies itself as the North American Distributor for Firmenich and IFF.[44]

 b.  Vigon International operates as a fragrance warehouse and distributor and has strategic partnerships with Givaudan, Firmenich, and Symrise.[45]

---

[43] Fragrance Creators Association, "Member Benefits & Becoming a Member", https://www.fragrancecreators.org/member-center.
[44] https://www.johndwalsh.com/
[45] https://www.vigon.com/our-partners/

44.     Because Defendants have artificially inflated the price of Fragrances, the price of distributor goods has correspondingly increased; as such, Defendants' artificially inflated prices were passed through and absorbed by Plaintiff and the Class, causing them damages.

**B.     Defendants Unlawfully Colluded to Fix the Price of Fragrances**

45.     Defendants acted in concert to fix, raise, maintain, and stabilize the price of Fragrances manufactured, sold, distributed, or imported into the United States. This unlawful agreement in restraint of trade began at least as early as January 1, 2018, and continues into the present. Defendants' conduct constitutes a horizontal price-fixing conspiracy, and violates Section 1 of the Sherman Act, state antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment laws of the several States.

**C.     Defendants Communicated Through Public Statements to Signal That They Were Fixing the Price of Fragrances**

46.     Defendants made public statements through press releases and reports that demonstrate a pattern of communications made with the intent of furthering an unlawful conspiracy to fix prices in the Fragrance market. On August 14, 2018, Symrise gave a press release announcing that "the company is in close dialogue with

its customers to actively implement price increases."[46] In the first week of September—only three weeks later—IFF CEO Andreas Fibig announced that their "teams are out there and increasing prices as much as they can."[47] On October 8, 2018, Givaudan publicly states that "the company continues to implement price increases in collaboration with its customers to compensate for the increases in input costs."[48] Defendants continued to raise prices, often in parallel, over coming years.

47.    For example, on March 17, 2022, IFF announced price increases affecting Fragrances due to the "significant escalation of raw material."[49] Less than a month later, Givaudan announced it too would "accelerate price increases in the second half of the year…after improving sales growth despite squeezed margins."[50]

---

[46] Symrise, "Strong organic growth of 9.0% in the first half of 2018", https://www.symrise.com/newsroom/article/strong-organic-growth-of-90-in-the-first-half-of-2018/

[47] International Flavor & Fragrances Inc. at Barclays Global Consumer Staples Conference. Boston. September 18, 2018. (Thomson StreetEvents)- Edited Transcript of International Flavor & Fragrances Inc. presentation Thursday, September 6, 2018 at 3:15:00pm GMT. Defendants at times refer to their Fragrance division as their scent business.

[48] Givaudan, "2018 Nine Month Sales," https://www.givaudan.com/media/media-releases/2018/2018-nine-month-sales (Oct. 8, 2018).

[49] IFF Press Release, "IFF Announces Global Price Increases Across All Divisions", https://ir.iff.com/news-releases/news-release-details/iff-announces-global-price-increases-across-all-divisions

[50] Givaudan, "Givaudan to Accelerate Price Increases as Input Costs Hit Margins", https://money.usnews.com/investing/news/articles/2022-07-21/givaudan-confirms-mid-term-targets-works-to-pass-on-higher-prices (Givaudan reported a 7.9% rise in sales as compared with second quarter 2021).

On August 2, 2022, Symrise announced price increases affected Fragrances, despite CEO Heinz-Juergen Bertram telling reporters that Symrise had "managed to pass on the bulk on the higher costs to customers in the first half of the year."[51] Three days later, Firmenich's CEO, Gilbert Ghostine, likewise announced price increases despite a 32% increase in its fine Fragrance sector.[52] Ghostine also stated that Firmenich had "passed on the vast majority of the cost increase already this year, and [would] continue doing so next year."[53]

### D. Defendants Used Membership and Positions of Authority in Trade Associations to Exclude Competitors

48.    Defendants used their positions in IFRA, RIFM, and FSAC to lobby for legislation and regulations and to set industry standards that would enable them to maintain control over the Fragrances market. Defendants' misuse of these trade organizations effectively stifled their competitors and prevented any would-be new entrants from gaining a foothold in the Fragrances market. Further, regular meetings

---

[51] Jagoda Darlak and David Latona, "Symrise hikes forecast as higher prices, demand offset soaring costs", Reuters, https://www.reuters.com/business/germanys-symrise-raises-sales-outlook-increased-demand-2022-08-02/ (Aug. 2, 2022).

[52] Jennifer Weil, "Firmenich Posts Record Full-year Top- and Bottom-line Growth", Yahoo News, https://www.yahoo.com/news/firmenich-posts-record-full-top-182010078.html (Aug. 5, 2022).

[53] Id.

of these trade organizations provided Defendants ample opportunities to collude, which they readily took.

49.     While the FCA (the trade organization Defendants left) has focused their efforts on greater transparency with customers, the Defendant-controlled FSAC has been using its power to "closely track[] fragrance-related developments at the U.S. Food and Drug Administration and U.S. Environmental Protection Agency and could be 'front and center' in discussions regarding fragrance ingredients."[54]

50.     Defendants have used their combined market share and chokehold on the FSAC to suppress innovation and consumer choice, and delay safety and transparency initiatives advocated for by competitors. Defendants will continue to wield trade organizations to maintain their dominant market share; as FSAC President and Chairman of the Board admitted, "it will be one of these four [fragrance] houses that will own the majority of the science and safety assessment data."[55] Nearly exclusive access to and control over this data will make it nearly impossible for small competitors to challenge industry standards coming out of the FSAC.

---

[54] Lauren Nardella, "World's Biggest Fragrance and Flavor Firms Join Forces to Champion Science in Public Policy", HBW Insight, https://hbw.pharmaintelligence.informa.com/RS151176/Worlds-Biggest-Fragrance-And-Flavor-Firms-Join-Forces-To-Champion-Science-In-Public-Policy.
[55] *Id.*

51.     Defendants' control of the FSAC in tandem with their influential positions in IFRA and RIFM cement Defendant's ability to dictate safety, health, and industry standards in the Fragrance market.

### E.    Defendants Have Injured Plaintiff and the Classes as a Result of Their Unlawful Restraint of Trade

52.     As summarized by Professor John Connor of Purdue University and the American Antitrust Institute, part of or all of the overcharge contained in the direct purchase will be passed on to indirect purchasers: "Direct purchasers from an effective sellers' cartel are the immediate losers. However, if the cartel is comprised of manufacturers…then other buyers farther down the distribution channel are also harmed."[56]

53.     While the specific percentage of overcharge passed through to indirect purchasers is a fact-specific question in each case, the American Bar Association's publication on antitrust damages states that "at least some of the overcharge will be passed on by the direct purchaser to the indirect purchaser(s) in the form of a higher price for the good."[57]

54.     While indirect purchasers may switch to a different supplier or consumer product if prices increase, the price increases resulting from Defendants'

---

[56] Connor, J. (2014), "Cartel Overcharges," *Research in Law and Economics*, Vol. 26, Emerald Group Publishing Limited, p. 256.
[57] American Bar Association, Antitrust Section, *Proving Antitrust Damages*, 3rd ed., Section 8.%.

unlawful conspiracy have affected an extremely significant portion of the market. As such, cost increases cannot simply be avoided by switching products or supplier.

55.     Economic theory indicates that the percentage of a given cost increase passed through by a firm to its customers depends on the competitiveness of the relevant industry.[58] In markets that are highly condensed and consolidated, such as Fragrance, profit margins are small, rendering input cost absorption untenable. In an industry that touches nearly all downstream products, pass through rates would be correspondingly high.

56.     The aforementioned allegations show that the Fragrance market is highly consolidated and condensed. Therefore, pass through rates would likewise be high.

57.     As indirect purchasers of Fragrances, Plaintiff and Class Members have absorbed the majority of the share of cost increases stemming from Defendants' price-fixing conspiracy.

58.     Due to Defendants' violations of the antitrust laws alleged herein, Plaintiff and the Classes have sustained injury to their businesses or property, having paid higher prices for consumer products containing Fragrances than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy,

---

[58] Ritz, R. (2017), "Oligopolistic Competition and Welfare," *Handbook of Game Theory and Industrial Organization*, L. Corchon and M. Marini (eds), Edward Elgar.

and, as a result, have suffered damages. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

### F.    Plus Factors Provide Additional Evidence that Defendants Conspired to Fix Prices in the Fragrance Market

59.    Plus factors are "economic actions and outcomes, above and beyond parallel conduct by oligopolistic firms that are inconsistent with unilateral conduct but consistent with explicitly coordinated action."[59] Plus factors support an inference of collusion, as opposed to mere conscious parallelism.[60] Some factors are more probative than others; these "super plus factors" being met lead to a strong inference of collusion.[61]

60.    Many plus factors are met here: Defendants' public statements demonstrating parallel pricing; the high degree of market power concentrated in the hands of Defendants; high barriers to entry for would-be market entrants; Defendants' exchange of highly sensitive competitive information via membership in trade organizations and participation in leadership roles; the relatively inelastic demand for Fragrances; the high-switching cost to customers; and defendants' myriad opportunities to collude.

---

[59] Kovaciv, et al, "Plus Factors and Agreement in Antitrust Law, 110 MICH. L.REV. 393 (2011) https://www.bateswhite.com/assets/htmldocuments/media.498.pdf.
[60] *Id.*
[61] *Id.* at 396-97.

61.    As alleged in more detail above, Defendants announced simultaneous price increases on multiple occasions during the Class Period.

62.    Defendants exchanged highly sensitive competitive information regarding pricing and volume. Reciprocal sharing of firm-specific information that would normally remain highly confidential is a "super plus factor," leading to a strong inference of collusion.

63.    The Fragrance market is highly concentrated in the hands of Defendants, who collectively hold 50% of the market globally. The Fragrance market is particularly susceptible to conspiracy because there are fewer participants with whom to negotiate, coordinate, and trust. Particularly, studies have shown that highly concentrated markets are more prone to price fixing.[62] This high level of concentration has been found to be a plus factor.[63]

64.    As alleged in detail above, the Fragrance market has significant barriers to entry that effectively prevent new entrants from gaining foothold in the market. These barriers include regulation, intellectual property, trade secrets, economy of scale, access to raw materials, high capital requirements, and the vertical integration of large existing Fragrance manufacturers. Because of these high barriers to entry,

---

[62] Christopher Leslie, "Antitrust Amnesty, Game Theory, and Cartel Stability, 31 J. CORP. L. note 28, at 564-65.
[63] *In re Blood Reagents Antitrust Litig.*, 266 F. Supp. 3d 750, 772 (E.D. Pa. 2017) (finding markets that are highly concentrated conducive to collusion).

Defendants are insulated from the risk of new entrants and are thus able to more effectively fix an artificially high price for Fragrances. This is another plus factor.

65.    The relative inelasticity of demand is another plus factor. As described herein, scent is a major consideration that drives end-user consumer purchase decisions. As such, most of the household and personal consumer products purchased for resale by Plaintiff and the Classes cannot forego Fragrance purchases altogether in the event of price increases. Nor can Plaintiff and the Classes seek a reasonable alternative to avoid paying the price increase, as all substitutes contain Fragrances and the price increase is market-wide. Here, Defendants further eliminated the possibility of reasonable alternatives by acquiring smaller competitors or merging with large competitors. Given the relatively inelastic demand for Fragrances, the artificially high prices charged by Defendants were sustainable.

66.    Defendants had myriad opportunities to meet, coordinate, monitor, and enforce their price-fixing cartel via their membership in trade organizations and the supervisory roles they held. The United States Department of Justice has stated that "collusion is more likely if the competitors know each other well through social connections, trade associations, legitimate business contacts, or shifting employment

from one company to another.[64] As Defendants occupy leadership roles in a number of trade associations, they had (and took) ample opportunities to collude and enforce the cartel.

## IV.    Governmental Investigation

67.    On March 7, 2023, the European Commission announced a raid of several Fragrance suppliers related to collusion concerning the supply of Fragrances and fragrance ingredients.[65] Simultaneously, the Commission sent a number of formal requests for information to several other companies in the Fragrance market.

68.    On the same day, United Kingdom Competition and Markets Authority ("CMA") initiated an investigation into the Fragrance market as it "has reason to suspect anti-competitive behavior has taken place involving suppliers of fragrance and fragrance ingredients for use in the manufacture of consumer products such as household and personal care products.[66] CMA noted it was working in concert with

---

[64] Department of Justice, "Price Fixing, Bid Rigging, and Market Allocation Schemes: What Thy Are and What to Look For, at 6. https://www.justice.gov/atr/file/810261/download.

[65] European Commission, "Antitrust: Commission confirms unannounced inspections in the fragrance sector", https://ec.europa.eu/commission/presscorner/detail/en/ip_23_1532 (March 7, 2023).

[66] Gov.UK, "CMA launches investigation into fragrances and fragrance ingredients, https://www.gov.uk/government/news/cma-launches-investigation-into-fragrances-and-fragrance-ingredients (March 7, 2023).

the EU Commission, the Swiss Competition Commission, and the Antitrust Division of the United States Department of Justice.

69.    Defendant Givaudan has publicly confirmed that it is the subject of the European Union's and Swiss' antitrust investigation relating to its participation in the cartel relating to manipulating the supply of Fragrances and Fragrance ingredients.[67]

## CLASS ACTION ALLEGATIONS

70.    Plaintiff brings this action on behalf of herself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(2) seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

**Nationwide Class:** All persons and entities in the United States who, during the Class Period, purchased Fragrances or Fragrance ingredients indirectly from a Defendant or Defendants' co-conspirators for their own commercial use.

71.    Plaintiff also brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to antitrust, unfair competition, and consumer protection laws as well as

---

[67]Foo Yun Chee and Oliver Hirt, "EU, UK, Swiss probe suspected fragrance cartel, Givaudan confirms cooperation", Reuters https://www.reuters.com/world/europe/eu-antitrust-regulators-raid-companies-association-fragrance-sector-2023-03-07/ (March 7, 2023).

common law unjust enrichment on behalf of the following Class (the "Damages Class"):

> **Damages Class:** All persons or entities in the Indirect Purchaser States[68] who, during the Class Period, purchased Fragrances or Fragrance ingredients indirectly from a Defendant or Defendants' co-conspirators for their own commercial use.

72.     The Nationwide Class and Damages Class are referred to collectively as the "Classes" unless otherwise indicated. Specifically excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, the Court, and persons who purchased Fragrances or Fragrance ingredients directly from Defendants.

73.     While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are (at least) thousands of members in the Classes. Joinder is therefore impracticable.

74.     Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of the Classes, thereby making

---

[68] The "Indirect Purchaser States" are the states listed in Counts Two and Three.

appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

a) Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Fragrances and Fragrance ingredients sold in the United States;

b) The identity of the participants of the alleged conspiracy;

c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d) Whether the alleged conspiracy violated federal antitrust laws and/or state antitrust, unfair competition, and/or consumer protection laws, as alleged in the following Claims for Relief;

e) Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the Class, thereby entitling Plaintiff and Class Members to disgorgement of all benefits derived by Defendants, as alleged in the following Claims for Relief.

f) Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and Class Members;

g) The effect of the alleged conspiracy on the prices of Fragrances sold in the United States during the Class Period;

h) Whether Plaintiff and the Class Members had any reason to know or suspect the conspiracy, or any means to discovery the conspiracy;

i) Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and Class Members;

j) The appropriate class-wide measure of damages for the Class.

75.    Plaintiff's claims are typical of the claims of Class Members, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiffs and all Class Members are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for Fragrances purchased indirectly from the Defendants or their co-conspirators.

76.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

77.    The questions of law and fact common to the Class Members predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

78.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

79.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

## STATUTE OF LIMITATIONS

80.    Plaintiff's claims are not barred by the statutes of limitations. This Complaint alleges a continuing course of unlawful conduct by which Defendants have inflicted continuing and accumulating harm within the applicable statutes of limitations.

81.    Each time Defendants engaged in an unlawful act complained of here, Defendants undertook an overt act that has inflicted harm on Plaintiff and other Members of the Classes.

82.    In the alternative, fraudulent concealment tolled the relevant statutes of limitations. Plaintiff and the Classes did not discovery, and could not discover, through the exercise of reasonable diligence, the existence of the conspiracy until March 7, 2023, when news that various governmental agencies had executed raids at Defendants' offices became public.

83.    Before that time, Plaintiff and the Classes were unaware of Defendants' unlawful conduct and did not know before then that they were paying supracompetitive prices for consumer products containing Fragrances throughout the United States during the Class Period.

84.    By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing. Fragrances are not exempt from antitrust regulation and, thus, Plaintiff and Classes reasonably considered the Fragrance industry to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Fragrance prices before March 7, 2023.

85.    Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and the Classes did not

have information that would have caused a reasonably diligent person to investigate whether a conspiracy existed until March 7, 2023.

86.     For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until March 7, 2023.

## **CLAIMS FOR RELIEF**

### **COUNT 1: VIOLATION OF § 1 OF THE SHERMAN ACT (15 U.S.C. § 1) (On Behalf of the Nationwide Class for Injunctive and Equitable Relief)**

87.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

88.     Defendants are direct competitors in the Fragrance market throughout the United States.

89.     Beginning at least as early as January 1, 2018 and continuing through the present, Defendants entered into a continuing contract, combination, and/or conspiracy, either express or tacit, with respect to the sale of Fragrances in unreasonable restraint of trade and commerce and in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

90.     The contract, combination, and/or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supracompetitive prices for Fragrances.

91.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

a) Participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Fragrances at certain levels, and otherwise to fix, increase, inflate, maintain, and/or stabilize effective prices paid by Plaintiff and Class Members with respect to consumer products containing one or more Fragrance components sold or used in connection with consumer services in the United States;

b) Participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and enforce the unlawful agreements they reached.

92.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices with respect to Fragrances.

93.     Defendants' anticompetitive acts described above were knowing, willful, and constitute a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and were an unreasonable and unlawful restraint of trade.

94.     There is no legitimate business justification for, or pro-competitive benefits attributable to, Defendants' conspiracy and overt acts in furtherance thereof. Any proffered business justification or asserted pro-competitive benefits would be pretextual, outweighed by the anticompetitive effects of Defendants' conduct, and could be achieved by means less restrictive than the conspiracy and overt acts alleged herein.

95.     The injury to Plaintiff and Classes is of the type that antitrust laws were designed to prevent and flow directly from Defendants' unlawful conduct.

96.     Plaintiff and Classes are threatened with future injury to their business and property by reason of Defendants' continuing violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

97.     Plaintiff and Classes are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## COUNT 2: VIOLATION OF THE STATE ANTITRUST STATUTES
### (On Behalf of Plaintiff and the Damages Class)

98.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

99.     During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of Fragrances and Fragrance ingredients in unreasonable restraint of trade in commerce, in violation of the various state antitrust and consumer protection statutes set forth below.

41

100.   Defendants' acts and combinations in furtherance of the conspiracy have caused unreasonable restraints in the market for Fragrances and Fragrance ingredients.

101.   As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated Indirect Purchasers in the Damages Class who purchased Fragrances and Fragrance ingredients have been harmed by being forced to pay artificially-inflated, supracompetitive prices for Fragrances and Fragrance ingredients.

102.   By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in violation of the following state antitrust laws pleaded below.

103.   **Arizona:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Ariz. Rev. Stat. §§ 44-1402,** *et seq.* with respect to purchases of Fragrances and Fragrance ingredients in Arizona by Class members and/or purchases by Arizona residents.

  a.  Defendants' combination or conspiracy had the following effects:
  (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) members of the Damages Class were deprived of free

and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1402, *et seq.*

104. **California**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **Cal. Bus. And Prof. Code, §§ 16720, *et seq.*** with respect to purchases of Fragrances in California by Class members and/or purchases by California residents.

a. During the Class Period, Defendants entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in

violation of Section 16720 to fix, raise, stabilize, and maintain prices of Fragrances at supracompetitive levels.

b. The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Fragrances.

c. For the purpose of forming and effectuating the unlawful trust, the Defendants have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of Fragrances.

d. The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) price competition in the sale of Fragrances has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Fragrances sold by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Fragrances indirectly

from Defendants have been deprived of the benefit of free and open competition.

e. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property in that they paid more for Fragrances than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

105. **Connecticut**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **Conn. Gen. Stat. Ann. §§ 35-26,** *et seq.* with respect to purchases of Fragrances in Connecticut by Class members and/or purchases by Connecticut residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Conn. Gen. Stat. Ann. §§ 35-26, *et seq*. Accordingly, members of the Damages Class seek all forms of relief available under Conn. Gen. Stat. Ann. §§ 35-26, *et seq*.

106. **District of Columbia**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **D.C. Code Ann. §§ 28-4502, *et seq.*** with respect to purchases of Fragrances in the District of Columbia by Class members and/or purchases by District of Columbia residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Fragrance prices

were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4502, *et seq*. Accordingly, members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4502 *et seq*.

107. **Hawaii:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Haw. Red. Stat. § 480-1, *et seq*.** with respect to purchases of Fragrances in Hawaii by Class member and/or purchases by Hawaii residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Code § 480-1, *et seq*. Accordingly, members of the Damages Class seek all forms of relief available under Haw. Code § 480-1, *et seq.*

108. **Illinois:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **740 Ill. Comp. Stat. Ann. 10/1, *et seq*.** with respect to purchases of Fragrances in Illinois by Class Members and/or purchases by Illinois residents.

a. Defendants' combination or conspiracy had the following effects:
(1) Fragrance price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, *et seq*. Accordingly, members of the Damages Class seek all forms of relief available under 740 Ill. Comp. Stat. Ann. 10/1, *et seq*.

109. **Iowa:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Iowa Code §§ 553.4, *et seq.*** with respect to purchases of Fragrances in Iowa by Class Members and/or purchases by Iowa residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.4, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.4, *et seq.*

110.  **Kansas:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Kan. Stat. Ann. §§ 50-101, *et seq.*** with respect to purchases of Fragrances in Kansas by Class members and/or purchases by Kansas residents.

a.  Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b.  During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, members of the Damages Class seek

all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

111.  **Maine:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Me. Rev. Stat. Ann. 10 §§ 1101, *et seq.*** with respect to purchases of Fragrances by Class members and/or purchases by Maine residents.

> a.  Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Maine; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

> b.  During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

> c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

> d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. Ann.

10, §§ 1101, *et seq.* Accordingly, members of the Damages Class

seek all relief available under Me. Rev. Stat. Ann. 10, §§ 1101, *et*

*seq.*

112.  **Michigan:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Mich. Comp. Laws Ann. §§ 445.772, *et seq.*** with respect to purchases of Fragrances in Michigan by Class members and/or purchases by Michigan residents.

   a.  Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices Fragrances.

   b.  During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

   c.  As a direct and proximate result of Defendants' conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreement in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.772, *et seq*. Accordingly, members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.772, *et seq*.

113. **Minnesota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Minn. Stat. §§ 325D.51, *et seq*.** with respect to purchases of Fragrances in Minnesota by Class members and/or purchases by Minnesota residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.51, *et seq.* Accordingly, members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.51, *et seq.*

114. **Mississippi**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **Miss. Code Ann §§ 75-21-3, *et seq.*** with respect to purchases of Fragrances in Mississippi by Class members and/or purchases by Mississippi residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have bene injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-3, *et seq.* Accordingly, members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-3, *et seq.*

115. **Nebraska**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **Neb. Code Ann. §§ 59-801, *et seq.*** with respect to purchases of Fragrances in Nebraska by Class members and/or purchases by Nebraska residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the

Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq*.

116. **Nevada**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **Nev. Rev. Stat. Ann. §§ 598A.060, *et seq*.** with respect to purchases of Fragrances in Nevada by Class members and/or purchases by Nevada residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated through Nevada; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout

Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

e. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

f. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

g. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq*. Accordingly, members of the Damages

Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.*

117.   **New Hampshire**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.H. Rev. Stat. Ann. §§ 356.2, *et seq.,*** with respect to purchases of Fragrances in New Hampshire by Class members and/or purchases by New Hampshire residents.

   a.   Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially throughout New Hampshire, (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

   b.   During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

   c.   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356.2, *et seq*. Accordingly, members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:2, *et seq.*

118.   **New Mexico:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.M. Stat. Ann. §§ 57-1-1, *et seq*.** with respect to purchases of Fragrances in New Mexico by Class members and/or purchases by New Mexico residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. S§ 57-1-1, *et seq.* Accordingly, members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

119. **New York:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.Y. Gen. Bus. L. §§ 340, *et seq.*** with respect to purchases of Fragrances in New York by Class members and/or purchases by New York residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout New York; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances, or purchased products that were otherwise of lower quality than they would have been absent the conspirators illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

b. During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly, members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

120.   **North Carolina**: Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.C. Gen. Stat. §§ 75-1, *et seq.*** with respect to purchases of Fragrances in North Carolina by Class members and/or purchases by North Carolina residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

121. **North Dakota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.D. Cent. Code §§ 51-08.1-01,** *et seq.* with respect to purchases of Fragrances in North Dakota by Class members and/or purchases by North Dakota residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Fragrance prices were

raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08/1-01, *et seq*. Accordingly, members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

122. **Oregon:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Or. Rev. Stat. §§ 646.705, *et seq.,*** with respect to purchases of Fragrances in Oregon by Class members and/or purchases by Oregon residents.

a.  Defendants' combination and conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

123.  **Rhode Island:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **R.I. Gen. Laws §§ 6-36-4, *et seq.*** with respect to

purchases of Fragrances in Rhode Island by Class members and/or purchases by Rhode Island residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

    b. During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of R.I. Gen. Laws §§ 6-36-4, *et seq*. Accordingly, members of the Damages Class seek all forms of relief available under R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

124.   **South Dakota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **S.D. Codified Laws An.. §§ 37-1, *et seq.*** with respect to purchases of Fragrances in South Dakota by Class members and/or purchases by South Dakota residents.

   a. Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

   b. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

   c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

   d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws An. §§ 37-1, *et seq*. Accordingly, members of the

Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

125.   **Tennessee:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Tenn. Code Ann. §§ 47-25-101, *et seq.*** with respect to purchases of Fragrances in South Dakota by Class members and/or purchases by South Dakota residents.

   a.   Defendants' combination or conspiracy had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

   b.   During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

   c.   As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

126.  **Utah:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Utah Code Ann. §§ 76-10-3101, *et seq*.** with respect to purchases of Fragrances in Utah by Class members and/or purchases by Utah residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, members of the Damages Class seek all relief available under Utah Code Ann. §§ 76-10-3101, *et seq.*

127. **Vermont:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Vt. Stat. Ann. 9 §§ 2453, *et seq.*** with respect to purchases of Fragrances by Class members and/or purchases by Vermont residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the

Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, members of the Damages Class seek all relief available under Vermont Stat. Ann. §§ 2453, *et seq*.

128. **West Virginia:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **W. Va. Code §§ 47-18-4, *et seq.*** with respect to purchases of Fragrances in West Virginia by Class members and/or purchases by West Virginia residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

129. **Wisconsin:** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Wis. Stat. §§ 133.01,** *et seq.* with respect to purchases of Fragrances in Wisconsin by Class members and/or purchases by Wisconsin residents.

a. Defendants' combination or conspiracy had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Fragrances prices were raised,

fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Fragrances.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

## COUNT 3: VIOLATION OF STATE CONSUMER PROTECTION LAW
### (On Behalf of Plaintiff and the Damages Class)

130. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

131. During the Class Period, Defendants engaged in unfair or deceptive acts or practices in violation of the state deceptive trade practices and consumer protection laws pleaded below.

132.   **Arkansas:** Defendants have engaged in unfair or deceptive acts or practices in violation of **Ark. Code Ann. § 4-88-107(a)(10)** with respect to purchases of Fragrances in Arkansas by Class members and/or purchases by Arkansas residents.

   a.   Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

   b.   During the Class Period, Defendants' illegal conduct had a substantial effect on Arkansas commerce.

   c.   As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

   d.   By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Ark. Code Ann. § 4-88-107(a)(10). Accordingly, members of the Damages Class seek all relief available under Ark. Code Ann. § 4-88-107(a)(10).

133.   **California:** Defendants have engaged in unfair or deceptive acts or practices in violation of **Cal. Bus. & Prof. Code § 17200, *et seq.*** with respect to purchases of Fragrances in California by Class members and/or purchases by California residents.

a. Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on California commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. Accordingly, members of the Damages Class seek all relief available under Cal. Bus. & Prof. Code § 17200, *et seq*.

134. **Florida:** Defendants have engaged in unfair or deceptive acts or practices in violation of **Fla. Stat. § 501.201(1),** *et seq.* with respect to purchases of Fragrances in Florida by Class members and/or purchases by Florida residents.

a. Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Florida commerce.

    c.  As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.  By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Fla. Stat. § 501.201(1), *et seq.* Accordingly, members of the Damages Class seek all relief available under Fla. Stat. § 501.201(1), *et seq.*

135.  **Illinois:** Defendants have engaged in unfair or deceptive acts or practices in violation of **815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*** with respect to purchases of Fragrances in Illinois by Class members and/or purchases by Illinois residents.

    a.  Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

    b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Illinois commerce.

    c.  As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

       d.  By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.* Accordingly, members of the Damages Class seek all relief available under 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*

136.  **Minnesota:** Defendants have engaged in unfair or deceptive acts or practices in violation of **Minn. Stat. § 325F.68, *et seq.*** with respect to purchases of Fragrances in Minnesota by Class members and/or purchases by Minnesota residents.

       a.  Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

       b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Minnesota commerce.

       c.  As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

       d.  By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Minn. Stat. § 325F.68, *et seq.* Accordingly, members of the Damages Class seek all relief available under Minn. Stat. § 325F.68, *et seq.*

137. **New Mexico:** Defendants have engaged in unfair or deceptive acts or practices in violation of **N.M. Stat. Ann. § 57-12-3,** *et seq.* with respect to purchases of Fragrances in New Mexico by Class members and/or purchases by New Mexico residents.

     a. Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

     b. During the Class Period, Defendants' illegal conduct had a substantial effect on New Mexico commerce.

     c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

     d. By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of N.M. Stat. Ann. § 57-12-3, *et seq.* Accordingly, members of the Damages Class seek all relief available under N.M. Stat. Ann. § 57-12-3, *et seq.*

138. **North Carolina:** Defendants have engaged in unfair or deceptive acts or practices in violation of **N.C. Gen. Stat. § 75-1.1,** *et seq.* with respect to purchases of Fragrances in North Carolina by Class members and/or purchases by North Carolina residents.

a. Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on North Carolina commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq*. Accordingly, members of the Damages Class seek all relief available under N.C. Gen. Stat. § 75-1.1, *et seq*.

139. **South Carolina:** Defendants have engaged in unfair or deceptive acts or practices in violation of **S.C. Code Ann. § 39-5-10, *et seq.*** with respect to purchases of Fragrances in South Carolina by Class members and/or purchases by South Carolina residents.

a. Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

c.  As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of S.C. Code Ann. § 39-5-10, *et seq*. Accordingly, members of the Damages Class seek all relief available under S.C. Code Ann. § 39-5-10, *et seq.*

140.  **Vermont:** Defendants have engaged in unfair or deceptive acts or practices in violation of **Vt. Stat. Ann. Tit. 9, § 2453, *et seq*.** with respect to purchases of Fragrances in Vermont by Class members and/or purchases by Vermont residents.

a.  Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Vt. Stat. Ann. Tit. 9, § 2453, *et seq*. Accordingly, members of the Damages Class seek all relief available Vt. Stat. Ann. Tit. 9, § 2453, *et seq.*

141. **Wisconsin:** Defendants have engaged in unfair or deceptive acts or practices in violation of **Wisc. Stat. § 100.18, *et seq*.** with respect to purchases of Fragrances in Wisconsin by Class members and/or purchases by Wisconsin residents.

a. Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c. As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Wisc. Stat. § 100.18, *et seq.* Accordingly, members of the Damages Class seek all relief available Wisc. Stat. § 100.18, *et seq.*

## COUNT 4: UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Damages Class)

142.  Plaintiff incorporates by reference the allegations in the preceding paragraphs.

143.  To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

144.  As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Fragrances and Fragrance ingredients.

145.  Defendants have benefitted from their unlawful acts and it would inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff or the Class Members for Fragrances and Fragrance ingredients.

146.  Plaintiff and the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the Class Members are entitled to the establishment of a constructive trust

consisting of all ill-gotten gains from which Plaintiffs and the members of the Class may make claims on a pro rata basis.

147.   Pursuit of any remedies against the firms from whom Plaintiff and the Class purchased Fragrances subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes of all others similarly situated, respectfully request that the Court grant judgment against Defendants as follows:

148.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

149.   That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

    (a)   An unlawful combination, trust, agreement, understanding, and/or concert of action and an unreasonable restraint of trade or commerce in violation of the federal antitrust laws and state antitrust, unfair competition and consumer protection laws as set forth herein; and

(b)     Acts of unjust enrichment by Defendants as set forth herein.

150.   Plaintiff and Class Members recover damages to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and Class Members be entered against Defendants in an amount to be trebled to the extent such laws permit;

151.   Plaintiff and Class Members recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

152.   Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

153.   Plaintiff and Class Members be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment.

154.   Plaintiff and Class Members be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

155.   Plaintiff and Class Members recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

156.   Plaintiff and Class Members have such other and further relief as the case may require and the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated:  June 30, 2023        */s/ Joseph J. DePalma*
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Mindee J. Reuben
Steven J. Greenfogel
1515 Market Street - Suite 1200
Philadelphia, PA 19102
Tel: (267) 519-8306
Fax: (973) 623-0858
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Frances Mahoney Mosedale
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

**GUSTAFSON GLUEK PLLC**
Dennis J. Stewart
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 595-3299
Fax: (612) 339-6622
dstewart@gustafsongluek.com

**BOIESBATTIN LLP**
Timothy D. Battin
Christopher V. Le
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704
tbattin@boiesbattin.com
cle@boiesbattin.com

**ZIMMERMAN REED LLP**
David M. Cialkowski
June P. Hoidal
Ian F. McFarland
1100 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
david.cialkowski@zimmreed.com
june.hoidal@zimmreed.com
ian.mcfarland@zimmreed.com

*Attorneys for Plaintiff Alexia Dahmes d/b/a Napa Valley*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is related to the following civil action:

- *Our Own Candle Company, Inc. v. Givaudan S.A. Et Al*, No. 2:23cv2174 (New Jersey) (J. Martini)
- *Candle Shoppe Of The Poconos, Inc. v. Givaudan S.A. Et Al*, 2:23cv3049(New Jersey) (J. Martini)
- *B & E Associates, Inc. v. Firmenich Sa Et Al*, No. 2:23cv3050 (New Jersey) (J. Martini)
- *Chautauqua Soap Company v. Givaudan S.A. Et Al*, No. 2:23cv3249 (New Jersey) (J. Martini)
- *Demeter F.L., Inc. v. International Flavors & Fragrances Inc. Et Al*, No. 2:23cv3265 (New Jersey) (J. Martini)
- *Hannas Candle Company v. International Flavors & Fragrances Inc. Et Al*, No. 2:23cv3266 (New Jersey) (J. Martini)
- *Cospro Development Corp. v. International Flavors & Fragrances Inc. Et Al*, 2:23cv3368 (NJ)

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated:  June 30, 2023
_/s/ Joseph J. DePalma_____
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Mindee J. Reuben
Steven J. Greenfogel
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (267) 519-8306
Fax: (973) 623-0858
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Frances Mahoney Mosedale
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

**GUSTAFSON GLUEK PLLC**
Dennis J. Stewart
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 595-3299
Fax: (612) 339-6622
dstewart@gustafsongluek.com

**BOIESBATTIN LLP**
Timothy D. Battin
Christopher V. Le
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel: (703) 764-8700
tbattin@boiesbattin.com
cle@boiesbattin.com

**ZIMMERMAN REED LLP**
David M. Cialkowski
June P. Hoidal
Ian F. McFarland
1100 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
david.cialkowski@zimmreed.com
june.hoidal@zimmreed.com
ian.mcfarland@zimmreed.com

*Attorneys for Plaintiff Alexia Dahmes d/b/a Napa Valley*